# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

### Civil Action No. 0:13-cv-61138-WJZ

GARRY BATES, an individual; and
RENAE BATES, an individual,

      Plaintiffs,

v.

WORLDPMX, INC., a Florida corporation;
INVESTMENT QUALITY DIAMONDS, INC., a Florida corporation;
SEAN MCCABE, an individual;
AMERIFIRST TRADING CORP., a Florida corporation;
C. LEO SMITH, an individual; and
WORTH GROUP, INC., a Florida corporation,

      Defendants.

_____/

## PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT

Respectfully submitted,

DAVID C. SILVER
Florida Bar No. 572764
E-mail:  DSilver@silverlaw.com
SCOTT L. SILVER
Florida Bar No. 095631
E-mail:  SSilver@silverlaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail:  JMiller@silverlaw.com
**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:    (954) 755-4799
Facsimile:    (954) 755-4684

*Counsel for Plaintiffs, Garry Bates and Renae Bates*

Plaintiffs, GARRY BATES, an individual; and RENAE BATES, an individual (collectively referred to as "Plaintiffs"), by and through undersigned counsel, hereby submit the following Memorandum of Law in Opposition to the motion filed by defendants WORLDPMX, INC., a Florida corporation ("WORLDPMX"); INVESTMENT QUALITY DIAMONDS, INC., a Florida corporation ("IQD"); and SEAN McCABE, an individual ("McCABE") (collectively "the WORLDPMX Defendants") [DE 33]; and the motion filed by defendant WORTH GROUP, INC., a Florida corporation ("WORTH GROUP") [DE 35], seeking dismissal of the Amended Complaint [DE 30].[1]  For the reasons set forth below, Defendants' motions should be denied.[2]

## I.      FACTUAL BACKGROUND AND CASE OVERVIEW

Defendants claim to sell physical commodities, including gold, silver, platinum, palladium, and diamonds, in off-exchange transactions to retail customers throughout the United States.  [AC ¶ 5].  **Bluntly stated – they do not.**  In presenting those products to customers such as Plaintiffs, Defendants make three highly material [mis]representations.  *Id*.  Defendants claim to: (1) sell and transfer to customers ownership of physical metals; (2) make loans to customers to purchase the physical metals; and (3) arrange for storage and store customers' physical metals in independent depositories.  *Id*.  The reality of the situation is that this "business" is a sham.  Defendants never possessed any precious metal, never held title to any precious metal, and never had any enforceable commitment to receive or direct delivery of precious metal.  [AC ¶ 2].

Plaintiffs invested $1,500,000 with DEFENDANTS; and almost instantaneously upon receipt of those funds, DEFENDANTS imposed upon Plaintiffs over $750,000 in fees, costs, and

---

[1] The WORLDPMX Defendants' motion also seeks to have certain factual allegations stricken from the Amended Complaint.  That argument is addressed below in Section VI.

[2] Paragraph references to Plaintiffs' Amended Complaint are stated herein as "AC ¶ ___."  Page references to the WORLDPMX Defendants' Motion to Strike and Motion to Dismiss are stated as "WORLDPMX at ___", and page references to WORTH GROUP's Motion to Dismiss are stated as "WORTH GROUP at ____."  Capitalized terms and abbreviations have the same scope and meaning as in the Second Amended Complaint.

commissions to invest their money in precious metals. [AC ¶ 4]. Defendants charged Plaintiffs a finance charge on a loan balance but never disbursed any loan funds to, for, or on behalf of Plaintiffs. [AC ¶ 2]. Defendants charged Plaintiffs a storage fee based on the total metal value of each transaction, even though Defendants never transferred, allocated, stored, or sold any physical metal to, for, or on behalf of Plaintiffs. *Id*. In short, Plaintiffs' investment funds were surreptitiously taken from them for work that was never done and products that never existed.

## II.   STANDARD OF REVIEW

"To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007)). There is no requirement of probability, or of any detail -- just plausibility. *Twombly* did not adopt a heightened pleading standard, did not change the requirement that a complaint need only include a short and plain statement of the claim, did not alter the point that "detailed factual allegations are not required," and did not change the rule that a complaint may proceed if it presents "enough facts to raise a reasonable expectation that discovery will reveal evidence" in support of the claim, even if the court believes that "actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id*. at 555-556. All that *Twombly/Iqbal* did was move the bar from "conceivable" to "plausible" as to whether a claim for relief has been stated.

## III.   THE EXISTENCE OF A WRITTEN ACCOUNT AGREEMENT DOES NOTHING TO SHIELD DEFENDANTS FROM LIABILITY

In their Motions to Dismiss, the WORLDPMX Defendants and WORTH GROUP both argue that the oral misrepresentations made to Plaintiffs cannot serve as the basis for actionable claims because, subsequent to the dates on which those oral misrepresentations were made, Plaintiffs entered into a written contract with the WORLDPMX Defendants (the "Account

Agreement") that purportedly contradicts the oral misrepresentations. *See*, WORLDPMX at 4-14; WORTH GROUP at 9-11.  DEFENDANTS' position is misguided and misplaced, as the written statements on which DEFENDANTS rely are as fraudulent as the oral representations that preceded them.  Moreover, even if the Account Agreement warrants any credibility, the terms of the document do not contradict the oral misrepresentations alleged in the Amended Complaint.  Lastly, to the extent some terms in the Account Agreement purport to supply clarity to the relationship between Plaintiffs and DEFENDANTS, those terms are overwhelmingly insufficient in light of the many undisclosed facts and fees not addressed in the Account Agreement -- facts and fees that are purposely withheld from Plaintiffs as part of DEFENDANTS' fraudulent scheme.

A.     **Despite What the Written Account Agreement Suggests, There Were Never Any Actual Precious Metals or Any Legitimate Precious Metals Transactions**

The Account Agreement purports to establish the framework for a series of future transactions in which customers of DEFENDANTS purchase from or through DEFENDANTS certain precious metals, on a leveraged basis, that the DEFENDANTS would either deliver to the customers or store and safeguard for the customers at a designated location.  The Amended Complaint alleges that those factual representations were outright lies in that:

- DEFENDANTS never possessed any precious metal.  [AC ¶¶ 5, 36, 52, 63, 65].

- DEFENDANTS never held title to any precious metal and never had any enforceable commitment to receive or direct delivery of precious metal.  [AC ¶¶ 5, 36, 63, 65].

- DEFENDANTS charged Plaintiffs a finance charge on a loan balance but never disbursed any loan funds to, for, or on behalf of Plaintiffs.  [AC ¶¶ 5, 37, 63].

- DEFENDANTS charged Plaintiffs a storage fee based on the total metal value of each transaction, even though DEFENDANTS

never transferred, allocated, stored, or sold any physical metal to,
for, or on behalf of Plaintiffs.  [AC ¶¶ 5, 36, 63, 65].

The Amended Complaint further alleges that, through the use of documentation that falsely represents actions that never actually took place and things that never actually existed, "*DEFENDANTS misrepresented to Plaintiffs that Plaintiffs bought, and DEFENDANTS had sold to them, precious metal, and that DEFENDANTS held the precious metal underlying Plaintiffs' purchases*."  [AC ¶ 3].  The presence of a written Account Agreement does nothing to shield DEFENDANTS from liability for the claims asserted in the Amended Complaint, as the written agreement warrants no credibility and merely serves to perpetrate DEFENDANTS' fraud.  In essence, the written statements on which DEFENDANTS rely are as fraudulent as the oral representations that preceded them.  The Amended Complaint clearly and repeatedly asserts that **DEFENDANTS never held any precious metals for Plaintiffs**, and the paperwork to which DEFENDANTS cite is all used as a cover-up to conceal the fact that there are no actual precious metals tied to these transactions.   To the extent those documents address potential future transactions, the documents serve to do nothing more than that -- they talk about illusory transactions for which the underlying metals exist only on paper but do not exist in the real world.  The lack of actual metals, despite what any transactional paperwork says, is the fraud that underlies DEFENDANTS' scheme and is the fraud for which DEFENDANTS should be held liable under the legal theories properly set forth in the Amended Complaint.

## B.   The Written Account Agreement Does Not Vary From the False Oral Representations

Even assuming *arguendo* that the Account Agreement is worthy of any credibility, that document does nothing to warrant dismissal of Plaintiffs' claims in this matter.  In the Amended Complaint, Plaintiffs allege DEFENDANTS verbally induced them with the following factual representations to get Plaintiffs to entrust DEFENDANTS with their funds:

- Plaintiffs were purchasing, and WORLDPMX was selling to Plaintiffs, physical precious metals.  [AC ¶ 23].

- WORLDPMX would loan Plaintiffs the balance of the value of the metals being purchased, above-and-beyond the percentage equity deposit made by Plaintiffs.  [AC ¶¶ 24, 35].

- By going through with the transaction, Plaintiffs would be purchasing, and WORLDPMX would sell to Plaintiffs, the total quantity of physical metal.  WORLDPMX would then transfer, in Plaintiffs' name, the total quantity of physical metal to a depository to be segregated from all other purchased metals and held there in Plaintiffs' name.  [AC ¶¶ 24, 44].

- WORLDPMX would hold the physical precious metal underlying Plaintiffs' purchase at an independent depository on Plaintiffs' behalf.  [AC ¶¶ 34, 44].

- Plaintiffs would receive title to the physical commodity after the purchase.  [AC ¶ 44].

For DEFENDANTS to prevail on their argument, the written Account Agreement to which they cite would have to directly contradict Plaintiffs' allegations.  In other words, the Account Agreement would have to reveal that:

- ❖ DEFENDANTS never actually bought for Plaintiffs any precious metal.

- ❖ DEFENDANTS never possessed any precious metal and never transferred, allocated, stored, or sold any physical metal to, for, or on behalf of Plaintiffs.

- ❖ DEFENDANTS never held title to any precious metal and never had any enforceable commitment to receive or direct delivery of precious metal.

- ❖ DEFENDANTS assessed finance charges for loan funds never disbursed to Plaintiffs.

The Account Agreement does not make any such representations.  To the contrary, the written provisions to which DEFENDANTS cite essentially mirror, and do not contradict, the false oral representations made to Plaintiffs, *to wit*:

| ALLEGED FALSE ORAL REPRESENTATION | REPRESENTATION IN WRITTEN ACCOUNT AGREEMENT |
|---|---|
| Plaintiffs were purchasing, and WORLDPMX was selling to Plaintiffs, physical precious metals. | WORLDPMX sells to, and buys from customers, precious metals.<br>[Section 4.2] |
| WORLDPMX would hold the physical precious metal underlying Plaintiffs' purchase at an independent depository on Plaintiffs' behalf. | "*Upon receipt of the required amount of good funds from Customer of the full purchase price for the purchase of precious metals, WPMX shall, as agreed, . . . deliver the precious metals . . . for the benefit of Customer to a depository used by WPMX for the purpose of safekeeping precious metals (collectively referred to as a "Bank").*"<br>[Section 7.3] |
| Plaintiffs would receive title to the physical commodity after the purchase. | "*You agree that title to precious metals purchased by Customer shall pass to Customer, and that WORLDPMX shall be deemed to have delivered such precious metals to Customer, when such precious metals are allocated to Customer . . . . Upon delivery of precious metals to a Bank in the United States, Customer acquires title to an undivided share of the precious metals so held.*"<br>[Section 7.4] |
| WORLDPMX would loan Plaintiffs the balance of the value of the metals being purchased, above-and-beyond the percentage equity deposit made by Plaintiffs. | "*If you ask WORLDPMX to finance a portion of any purchase, you promise to pay to WORLDPMX . . . the sum of all outstanding advances ("loan balance") made by WORLDPMX to or for your benefit, together with interest thereon from the dates of the respective advances . . . . [A]ll advances by WORLDPMX to you will be used for the purchase of precious metals for investment of for other commercial purposes . . . .*"<br>[Section 12.1] |

In light of the foregoing, DEFENDANTS' case law citations are inapposite to the matter at hand.  While DEFENDANTS request dismissal of Plaintiffs' claims by asserting "[Plaintiffs'] reliance upon *oral statements which were at variance with the written documents* were not reasonable as a matter of law,"[3] the citations above show that there were no variances between the key oral statements made to Plaintiffs and the written representations expressed in the Account Agreement.

### C.  The Written Account Agreement Fails to Disclose Numerous Excessive Fees and Expenses

With regard to Plaintiffs' allegations that DEFENDANTS charged Plaintiffs numerous fees and expenses that were never disclosed, DEFENDANTS cite to certain sections of the Account Agreement in which some fees and expenses are vaguely disclosed.  *See*, WORLDPMX at 10-11; WORTH GROUP at 5-7 and 10.  However, those scant provisions address only the *disclosed* charges, not the exorbitant <u>undisclosed</u> charges that form a vital basis of Plaintiffs' claims.  As the Amended Complaint clearly states:

> ***Notwithstanding the disclosures relating to investment risk, fees, and expenses contained in the paperwork Plaintiffs were required to sign*** *in connection with opening an account with WORLDPMX, there still remained many undisclosed facts that were withheld from Plaintiffs that essentially render the written disclosures utterly hollow, as **the undisclosed facts are those that render the investment in precious metals a colossal disaster for investors such as Plaintiffs.***

*See*, AC ¶ 46 (emphasis added).  *See also*, AC ¶ 60 (citing to "*undisclosed mark-ups and mark-downs*"), AC ¶ 63(d) (same), and AC ¶ 65(c) (same).  Regardless of the presence of certain fee disclosures in the Account Agreement, those disclosures do nothing to undermine, negate, or require dismissal of Plaintiffs' claims that the undisclosed fees and expenses are those that

---

[3] *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1368-69 (S.D. Fla. 2003) (emphasis added).

"*render the investment in precious metals a colossal disaster for investors such as Plaintiffs*." As such, DEFENDANTS have not set forth a viable basis upon which to require dismissal of the claims Plaintiffs have asserted in their Amended Complaint.

## IV.   THE AMENDED COMPLAINT PROPERLY SETS FORTH PLAINTIFFS' CLAIMS OF FRAUD

In their Motions to Dismiss, the WORLDPMX Defendants and WORTH GROUP both argue that Count III ("Fraudulent Inducement") of the Amended Complaint does not properly set forth Plaintiffs' claim of fraud -- the WORLDPMX Defendants arguing that Plaintiffs have not proffered enough evidentiary proof to support their claims, and WORTH GROUP arguing that the fraudulent acts underlying Count III are not set forth with sufficient particularity. *See*, WORLDPMX at 4-14; WORTH GROUP at 11-15. As demonstrated below, both arguments are erroneously placed; and there are no valid grounds upon which Count III should be dismissed.

### A.   A Motion to Dismiss is Designed to Examine Factual Allegations, Not Weigh Evidence

The WORLDPMX Defendants attack upon Count III -- which is limited solely to Plaintiffs' purchase of precious gems and does not seek dismissal of any other portion of Plaintiffs' claims as they relate to precious metals -- can be summarized thusly:

> *Plaintiffs allege that they were fraudulently induced to purchase a rare red diamond and that it was not worth what they paid for it. \* \* \* In fact, to date Plaintiffs have not filed any document that supports their claim that the diamond is not worth the value they paid for it, thus they cannot support a claim that they were fraudulent induced to buy the red diamond for less than [its] true value. \* \* \* Plaintiffs have failed to plead the requisite elements of fraud in the inducement as it pertains to the red diamond, and all allegations pertaining to same should be dismissed.*

In setting forth their argument, the WORLDPMX Defendants appear to be confusing the legal standard applicable to a Motion to Dismiss with the standard applicable to a Motion for

Summary Judgment.  On a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) -- like the one

the WORLDPMX Defendants have presented to the Court -- the Court's function is not to weigh

the evidence that might be presented at a trial but merely to determine whether the complaint

itself is legally sufficient.

> The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true.  **The court should not weigh the evidence, but merely "determine whether the complaint itself is legally sufficient."**  Dismissal of a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.

*Nickell v. Pleskovich*, 2008 U.S. Dist. LEXIS 117729, at *10 (N.D. Fla. Jan. 4, 2008) (citations

omitted; emphasis added).  By arguing that Plaintiffs "*have not filed any document that supports*

*their claim*" and concluding that Plaintiffs "*cannot support a claim that they were fraudulent*

*induced to buy the red diamond for less than [its] true value,*" the WORLDPMX Defendants are

applying the wrong standard of review.  Plaintiffs need not proffer, at this time, all evidence they

might use at trial to support their claim.  At this stage, all of Plaintiffs' allegations -- and all

reasonable inferences to be drawn therefrom -- must be accepted as true; and the Court can only

dismiss Plaintiffs' claim if it appears beyond a doubt that no set of facts can be presented to

support Plaintiffs' claims.  As applied to the facts of this case, that would require the Court to

determine at this time that it appears beyond a doubt that it would be impossible for Plaintiffs to

prove the red diamond DEFENDANTS induced them to purchase was worth less than the price

Plaintiffs paid for the diamond.  The well-pleaded allegations of the Amended Complaint do not

support such a conclusion, *to wit*:

> <u>Paragraph 68</u>. *For example, on or about April 18, 2013, WORLDPMX induced Plaintiffs to invest $345,000 in a precious stone that WORLDPMX described thusly:*

> *.31 carat Cut-Cornered Rectangular Modified Brilliant Cut Fancy Red Diamond, Clarity SI2, GIA Cert. # 2155160180*

> Paragraph 69. *Upon information and belief, the value of the diamond is nowhere near what Plaintiffs were induced to pay for it. On information and belief, the diamond is worth between $50,000 and $125,000.*

> Paragraph 70. *On or about May 4, 2013, Plaintiffs were informed that on or about May 3, 2013, their diamond had been shipped to the GIA laboratory in New York City for re-certification. Attached hereto as Exhibit "B" is an image of the Brinks Global Services Pickup Manifest purporting to reflect shipment of the diamond to GIA New York. The Pickup Manifest patently states that only one piece of merchandise, valued at $345,000, was in the package shipped. Moreover, TALLO-WPMX told Plaintiffs that everything in the shipped package belonged to Plaintiffs.*

> *                    *                    *

> Paragraph 74. *Unbeknownst to Plaintiffs at the time, and contrary to the information provided to Plaintiffs and the information contained in the shipping documentation, WORLDPMX, IQD, and MCCABE had actually placed in the May 3, 2013 shipping package to GIA New York three diamonds, not one. Notwithstanding the inclusion of two additional diamonds, WORLDPMX, IQD, and MCCABE still stated the "carriage value" of the package as being $345,000 -- the exact amount of money Plaintiffs had paid for their diamond(s). WORLDPMX, IQD, and MCCABE did this to fool Plaintiffs into paying for three diamonds while only acknowledging Plaintiffs' ownership of one of the diamonds.*

Based on the foregoing facts alone, it is clear that since the "carriage value" of the package containing three diamonds was stated by the WORLDPMX Defendants to be $345,000.00, then no single diamond in that package could sensibly be worth $345,000.00. Thus, it cannot be said that it will be impossible for Plaintiffs to prove the red diamond was worth less than $345,000.00 or that Plaintiffs were falsely induced into their purchase.

Moreover, the valuation of the diamond is clearly a question of fact which cannot be disposed of on a Motion to Dismiss.  "[A]t the motion to dismiss stage, the Court must assume that the well-plead facts of the Complaint are true." *Rutkowski v. Daimler Chrysler Corp.-UAW Pension Plan*, 2007 U.S. Dist. LEXIS 72416, at *7 (M.D. Fla. Sept. 27, 2007) (denying motion to dismiss and refusing to rule on any issues of fact until after the parties have engaged in discovery).  Accepting as true all of the factual allegations in the Amended Complaint, the Court should rightly deny the WORLDPMX Defendants' request for dismissal of Count III as it relates to Plaintiffs' purchase of precious gems.

### B.    Worth Group's Fraudulent Acts Are Specifically Pleaded

WORTH GROUP attacks Count III of the Amended Complaint from a slightly different, but no more effective, angle than the one utilized by the WORLDPMX Defendants.  According to WORTH GROUP, Plaintiffs have failed to state with particularity their claims of the fraudulent activity perpetrated by WORTH GROUP.  In that regard, WORTH GROUP glosses over the very specific allegations contained within the Amended Complaint that demonstrate WORTH GROUP's culpable actions, *to wit*:

> Paragraph 18. *WORTH GROUP never possessed any precious metal, never held title to any precious metal, and never had any enforceable commitment to receive or direct delivery of precious metal on behalf of Plaintiffs.  WORTH GROUP charged Plaintiffs a finance charge on a loan balance but never disbursed any loan funds to, for, or on behalf of Plaintiffs.  WORTH GROUP charged Plaintiffs a storage fee based on the total metal value of each transaction, even though WORTH GROUP never transferred, allocated, stored, or sold any physical metal to, for, or on behalf of Plaintiffs.*
>
> Paragraph 19. *WORTH GROUP, through false reports and statements, specifically the trade confirmations, the trade lists, the position lists, the accountant statements, and the notices of allocation, misrepresented to Plaintiffs that Plaintiffs bought, and that WORTH GROUP had sold to them, precious metal,*

- 11 -

*and that WORTH GROUP held the precious metal underlying Plaintiffs' purchases.*

Paragraph 63(i). *AMERIFIRST, SMITH, and WORTH GROUP charged a fictitious finance charge on the loan balance but never disbursed any loan funds to, for, or on behalf of Plaintiffs.*

Paragraph 63(j). *AMERIFIRST, SMITH, and WORTH GROUP charged fictitious storage fees based on the total metal value of each transaction, even though AMERIFIRST, SMITH, and WORTH GROUP never transferred, allocated, stored, or sold any physical metal to, for, or on behalf of Plaintiffs.*

Paragraph 63(k). *Each and every report and statement prepared by AMERIFIRST, SMITH, and WORTH GROUP, specifically the trade confirmations, the trade lists, the position lists, the account statements, and the notices of allocation, misrepresented to Plaintiffs that Plaintiffs bought, and that AMERIFIRST and/or WORTH GROUP sold to Plaintiffs, precious metal, and that depending on the transaction, AMERIFIRST and/or WORTH GROUP held the precious metal underlying Plaintiffs' purchases.*

   i. *Through these false reports and statements, specifically the trade lists and the account statements, AMERIFIRST and WORTH GROUP misrepresented to Plaintiffs that AMERIFIRST and WORTH GROUP made loans to Plaintiffs to enable Plaintiffs to purchase 80% balance of metal;*

   ii. *The trade confirmations, trade lists, position lists, account statements, and notices of allocation were false and deceptive. AMERIFIRST and WORTH GROUP, in near identical fashion, never had possession of, title to, or any enforceable commitment of precious metal;*

   iii. *AMERIFIRST and WORTH GROUP could not and did not actually transfer, allocate, or sell any precious metal to Plaintiffs;*

   iv. *AMERIFIRST and WORTH GROUP charged Plaintiffs a storage fee, even though no metal*

> *was ever transferred, allocated, or sold to Plaintiffs; and*
>
> v.    *AMERIFIRST and WORTH GROUP never made an actual loan to Plaintiffs. AMERIFIRST and WORTH GROUP never dispersed any actual loan funds to Plaintiffs. AMERIFIRST and WORTH GROUP charged Plaintiffs a finance fee, even though no loan was ever actually made to Plaintiffs.*

WORTH GROUP is alleged to have charged Plaintiffs fees and expenses for transactions that never took place. WORTH GROUP is alleged to have charged Plaintiffs fees and expenses for loans that were never actually made to Plaintiffs. Perhaps most egregiously, WORTH GROUP is alleged to have created and provided to Plaintiffs false written reports to mislead Plaintiffs into believing that Plaintiffs bought, and that WORTH GROUP had sold to them, precious metal, and that WORTH GROUP held the precious metal underlying Plaintiffs' purchases. These allegations are specific and are pointed directly at WORTH GROUP. For WORTH GROUP to assert that the allegations are vague or somehow do not adequately inform it of what it is accused of having done wrong, WORTH GROUP falls well short of what it must proffer to warrant dismissal of Plaintiffs' Amended Complaint.

## V.    THE AMENDED COMPLAINT PLEADS VIABLE CLAIMS AGAINST INVESTMENT QUALITY DIAMONDS, INC. AND SEAN McCABE

### A.    Claims against Investment Quality Diamonds, Inc.

The Amended Complaint asserts only one cause of action against IQD: Count IV ("Civil Conspiracy"). IQD argues that "*[a]s IQD did not commit any of the underlying torts in this complaint, it could not have committed civil conspiracy to commit the tort.*" *See*, WORLDPMX at 15. In presenting its position, though, IQD misstates or misunderstands the law applicable to Plaintiffs' claim.

> In order to properly state a claim for civil conspiracy, a plaintiff must allege "'(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'" * * * **Despite the requirement of an underlying tort or wrong, "[e]ach co-conspirator need not act to further a conspiracy; each 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators.'"**

*Johnson Law Group v. Elimadebt USA, LLC*, 2010 U.S. Dist. LEXIS 51079, at *19-20 (S.D. Fla. May 24, 2010) (emphasis added).  Even if IQD were not alleged to have committed the tort or statutory violation underlying the civil conspiracy, that point is immaterial.  *See*, *Pafumi v. Davidson*, 2007 U.S. Dist. LEXIS 43138, at *4 (S.D. Fla. 2007) (finding it unnecessary for each defendant charged with conspiracy to be accused of making misrepresentations as long as at least one co-conspirator committed such an overt act).  Plaintiffs have adequately pleaded their claim for civil conspiracy and have alleged that IQD knew of the scheme and assisted in some way.  *See*, *e.g.*, AC ¶ 11 (identifying IQD as an "alter ego" of Defendant McCabe, who knowingly used the corporate entity to further the fraudulent scheme), AC ¶ 72 (identifying IQD as a shell company created to deflect liability from McCabe and contribute to DEFENDANTS' deceptive and fraudulent scheme), AC ¶ 74 (IQD knowingly stated the "carriage value" of the package shipped to GIA New York in such a manner as to, and with intent to, fool Plaintiffs into paying for three diamonds while only acknowledging Plaintiffs' ownership of one of the diamonds), and AC ¶ 78 (identifying May 3, 2013 letter sent from IQD to GIA New York materially assisting in the fraud concerning Plaintiffs' purchase of precious stone(s)).  Because Plaintiffs have adequately pleaded their claim against IQD, that claim should not be dismissed as requested by the WORLDPMX Defendants.

B.    **Claims against Sean McCabe**

To defend himself against the claims asserted against him, McCABE asserts that Counts I, II, and III should be dismissed because the written Account Agreement adequately shields him from the oral misrepresentations that were made to Plaintiffs before they were forced to enter into the Account Agreement.  As noted above, the Account Agreement actually mirrors the oral misrepresentations; it does not vary from those misrepresentations.   Therefore, McCABE's argument in that regard is fatally flawed; and his request for dismissal of Counts I, II, and III must be denied.

In response to Count IV of the Amended Complaint ("Civil Conspiracy"), McCABE argues that he "*could not have conspired with either [WORLDPMX] or IQD because he is the sole officer of each corporation*" and that "*the intracorporate conspiracy doctrine prevents conspiracy between the same corporate actors*."   *See*, WORLDPMX at 15.   McCABE's argument focuses so narrowly on himself that he fails to grasp the full context of Count IV. Though under the intracorporate conspiracy doctrine, "an agreement among the officers of a single corporation acting in their official capacity is not a conspiracy because a corporation cannot conspire with itself,"[4] this is not an instance in which the alleged conspiracy is limited to just one corporation and its officers.  Count IV of the Amended Complaint alleges that McCABE was part of a conspiracy not only with his own sham entities (WORLDPMX and IQD) but also with AMERIFIRST TRADING CORP., C. LEO SMITH, and WORTH GROUP -- two entities and an individual who have economic existences and interests completely separate from McCABE.   Because Plaintiffs' Amended Complaint alleges a conspiracy between separate economic powers that were previously pursuing divergent goals -- *i.e.*, separate economic actors

---

[4] *Tiftarea Shopper, Inc. v. Ga. Shopper, Inc*., 786 F.2d 1115, 1118 (11th Cir. 1986).

- 15 -

pursuing separate economic interests -- the intracorporate conspiracy doctrine does not shield McCABE in this instance. *See*, *e.g.*, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984); *see also*, *St. Joseph's Hosp. v. Hosp. Corp. of Am.*, 795 F.2d 948, 956 (11th Cir. 1986) (finding a conspiracy existed between separate entities with separate economic interests because "the guiding principle is the requirement that there be more than one independent business entity involved in the combination or conspiracy."). Therefore, McCABE's request that the Court dismiss Count IV against him should be denied.

## VI. THE WORLDPMX DEFENDANTS' MOTION TO STRIKE SHOULD BE DENIED

In what can be categorized as their most desperate response to the Amended Complaint, the WORLDPMX Defendants ask that the Court strike the factual allegations contained in Paragraphs 30 and 40 of the Amended Complaint. According to the WORLDPMX Defendants, those allegations "*have no bearing on the allegations raised in this Amended Complaint*" and are "*entirely immaterial to this litigation*." What the WORLDPMX Defendants characterize as "irrelevant" and "immaterial to this litigation" is more accurately characterized as highly relevant, even if perhaps somewhat damning or embarrassing for the WORLDPMX Defendants' defense. The allegations in question do not demonstrably prejudice the WORLDPMX Defendants in any way and do not warrant the Court striking them from the Amended Complaint. "A motion to strike should be granted only if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party. Because this standard is rarely met, motions to strike are generally disfavored by the Court and are often considered time wasters." *Vaughn v. City of Orlando*, 2008 U.S. Dist. LEXIS 61526, at *6 (M.D. Fla. Aug. 12, 2008) (citations omitted). *See also*, *Powell v. Carey Int'l, Inc.*, 2006 U.S. Dist. LEXIS 76025, at *4-5 (S.D. Fla. Oct. 19, 2006) ("[A] disputed question of fact cannot be

decided on a motion to strike and when there is no showing of prejudicial harm to the moving

party, the courts generally are not willing to determine disputed and substantial questions of law.

Under such circumstances, the court may properly defer action on the motion and leave the

sufficiency of the allegations for determination on the merits.").   As explained below, the

WORLDPMX Defendants' Motion to Strike is merely a "time waster" that should not be

granted.

      A.    **Paragraph 30**

Paragraph 30, which the WORLDPMX Defendants seek to have stricken as

"*impertinent*" and "*entirely immaterial to this litigation*" asserts the following:

> Paragraph 30. *DEFENDANTS' customers who purchase precious
> metals, including Plaintiffs, see the equity in their precious
> metals investments drained by fees and commissions that are
> assessed at the inception of their transactions and by the
> constant accumulation of interest charges on the leverage
> portion of their accounts. The fees, commissions, and interest
> charges negatively affect consumers' ability to break-even or
> profit on the precious metals investments. On information and
> belief, most customers utilizing this investment vehicle lose
> money.* **In a recent lawsuit brought in this district by the
> United States Commodity Futures Trading Commission
> against a similar set of inter-related corporate defendants
> and individuals who were operating a precious   metals
> investment scheme, it was estimated by the court-appointed
> Special Monitor and Corporate Manager that nearly 95% of
> customers utilizing these types of investment vehicles lose
> money.**

(Emphasis added to highlight the particular language the WORLDPMX Defendants seek to have

stricken).

It is hard to fathom how allegations of a Special Monitor and Corporate Manager

appointed by this Court in a similar lawsuit "*have no bearing on the allegations raised in this

Amended Complaint*" and are "*entirely immaterial to this litigation*" when the Special Monitor's

conclusions speak to the very type of investment vehicle that is the subject of this lawsuit.  In

*CFTC v. Hunter Wise Commodities, LLC*, U.S. Dist. Ct. - S.D. Fla. - Case No. 9:12-cv-81311-DMM, Court-appointed Special Monitor Melanie E. Damian, Esq. was retained to investigate a precious metals fraudulent scheme nearly identical to the one set forth in Plaintiffs' Amended Complaint.   In reviewing and reporting on the scheme and the relationship between the introducing brokerage firm, the principals behind that firm, and the clearing firms/back-office support personnel, the Special Monitor concluded that "*Nearly all end-customers (or 93%) sustained trade-related losses on their investment.*"  *See*, *CFTC v. Hunter Wise* at DE 102.  The structure and overall investment scheme in the Hunter Wise case is nearly identical to the scenario in the instant matter, and the broad conclusions the Special Monitor drew about precious metals investments are as applicable to the instant matter as they are in the *CFTC v. Hunter Wise* case.

In *Powell*, *supra*, this Court addressed a matter in which a group of defendant sought to strike from an Amended Complaint certain references to parallel lawsuits involving the same industry, the same legal and factual issues and claims, and even the same defendants as the ones in the *Powell* case.   In discarding the defendants' request to have those allegations in the Amended Complaint stricken as "immaterial," this Court eloquently wrote:

> If the allegations are "immaterial, they simply do not matter; and the court need not be at pains to blot them away.  Striking material from pleadings is permissive with, not mandatory for, the court.  After all, it is the present policy of the trial courts of the United States not to root up cockle in the perilous time of sprouting, but rather to leave its elimination to the harvest season, when without loss or harm, it may be discarded and the good grain preserved as the substance of judgment."

*Powell*, 2006 U.S. Dist. LEXIS 76025 at *7-8 (*citing Gas Consumers Ass'n v. Philadelphia Gas Works Co.*, 12 F.R.D. 125, 127 (D. Penn. 1951)).  Here too, the Court need not "be at pains to

blot away" the allegations in Paragraph 30; as they are material to the instant controversy and cause no demonstrable prejudice to the WORLDPMX Defendants.

**B.**    **Paragraph 40**

Paragraph 40, which the WORLDPMX Defendants seek to have stricken as "*having no bearing on the allegations raised in the Amended Complaint,*" asserts the following:

> Paragraph 40. *Although Plaintiffs were unaware of it at the time, an investigation of WORLDPMX in advance of filing this suit has revealed that, prior to him telephonically soliciting Plaintiffs, TALLO-WPMX was criminally convicted in the State of Florida in 2004 for unlicensed telemarketing (Case No. 04004948CF10D). TALLO-WPMX was incarcerated in the State of Florida from September 14, 2004 until October 1, 2005.*

As explained above, it is hard to fathom why the WORLDPMX Defendants believe a portion of Paragraph 30 should be stricken.   It is equally hard, if not more difficult, to comprehend the WORLDPMX Defendants' suggestion that the facts in Paragraph 40 relating to WORLDPMX's utilization of a convicted telemarketing felon to conduct "cold call" solicitations of potential investors -- including Plaintiffs -- are not relevant to the instant dispute.   As alleged in the Amended Complaint, that is how Plaintiffs were lured into DEFENDANTS' scheme and was part-and-parcel of DEFENDANTS' fraudulent operation.   *See*, AC ¶ 39 ("*In March 2012, Plaintiffs were contacted by a "cold call" from Roland "Joseph" Tallo ("TALLO-WPMX") – who held himself out to be a representative of WORLDPMX – pitching investments in physical bullion (i.e., gold, silver, and platinum) as well as precious gems*.").   While the WORLDPMX Defendants cite to Fed. R. Evid. 404(b)(1) as a basis for their request to have this allegation stricken from the Amended Complaint, that evidentiary rule applies to the trial presentation of the parties' respective cases, not as a basis to strike a factual allegation from a pleading at the outset of litigation.   The WORLDPMX Defendants' argument on this point is misplaced, is

overstated, and provides no viable grounds upon which to strike the highly material allegations

contained in Paragraph 40 of the Amended Complaint.

**VII.**    <u>**CONCLUSION**</u>

For the foregoing reasons,[5] Plaintiffs respectfully request the Court deny WORLDPMX,

IQD, and McCABE's Motion to Strike and Motion to Dismiss the Amended Complaint [DE 33];

and WORTH GROUP's Motion to Dismiss the Amended Complaint [DE 35].


Respectfully submitted,

**SILVER LAW GROUP**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:    (954) 755-4799
Facsimile:    (954) 755-4684


By:_____
DAVID C. SILVER
Florida Bar No. 572764
E-mail:  DSilver@silverlaw.com
SCOTT L. SILVER
Florida Bar No. 095631
E-mail:  SSilver@silverlaw.com
JASON S. MILLER
Florida Bar No. 072206
E-mail:  JMiller@silverlaw.com

---

[5] With regard to any arguments raised in Defendants' motions that are not specifically addressed herein, Plaintiffs do not concede or acquiesce to Defendants on those points.  Plaintiffs simply rely on the strength and viability of the allegations as they have been set forth in the Amended Complaint without the need for further exposition.

## CERTIFICATE OF SERVICE

      **I HEREBY CERTIFY** that a copy of the foregoing was electronically filed with the Clerk of Court on this ___3rd___ day of October 2013 by using the CM/ECF system which will send a notice of electronic filing to the following CM/ECF participant(s): **ANDREW N. COVE, ESQ. and MICHELE WATT, ESQ.,** COVE & ASSOCIATES, P.A., *Counsel for Defendants, WorldPMX, Inc., Investment Quality Diamonds Inc., and Sean McCabe*, 225 South 21st Avenue, Hollywood, FL 33020, E-mail: anc@covelaw.com, mlw@covelaw.com; **FRED A. SCHWARTZ, ESQ.,** KOPELOWITZ OSTROW, *et al.*, *Counsel for Defendants, WorldPMX, Inc., Investment Quality Diamonds Inc., and Sean McCabe*, 700 South Federal Highway - Suite 200, Boca Raton, FL 33432, E-mail: Schwartz@kolawyers.com; **CARL F. SCHOEPPL, ESQ.,** SCHOEPPL & BURKE, P.A., *Counsel for Defendants, WorldPMX, Inc., Investment Quality Diamonds Inc., and Sean McCabe*, 4651 North Federal Highway, Boca Raton, FL 33431-5133, E-mail: carl@schoepplburke.com; **TODD STONE, ESQ.,** THE STONE LAW GROUP, *Counsel for Defendants, Amerifirst Trading Corp. and C. Leo Smith*, 101 NE Third Avenue - Suite 1270, Fort Lauderdale, FL 33301; E-mail: TStone@tislaw.net; and **GEOFFREY M. CAHEN, ESQ.,** GREENBERG TRAURIG, P.A., *Counsel for Defendant, Worth Group, Inc.*, 5100 Town Center Circle – Suite 400, Boca Raton, FL 33486; E-mail: CahenG@gtlaw.com.

_____
           DAVID C. SILVER